*143 ORDER DENYING TEMPORARY RESTRAINING ORDER; ORDER DENYING MOTION TO SHOW CAUSE
KATHARINE ENGLISH, Chief Judge.
A. BACKGROUND; INTRODUCTION
Petitioner Pearsall has filed a complaint against the Tribal Council, the Tribe, and three individuals, all of whom are members of the Tribal Council, as is Petitioner himself. Petitioner generally alleges that the Tribal Council has acted unlawfully in allowing motions to intervene and stay to be filed in five on-going ethics matters brought under the Tribal Ethical Standards Ordinance and in hiring and paying “ ‘outside counsel’ with Tribal funds to prepare, file and pursue these motions.” (First Amended Complaint at 5). In a separate motion, Petitioner seeks the issuance of either a Temporary Restraining Order (TRO) or an Order to Show Cause. That motion is the matter that is presently before the Court [1].
In his proposed TRO, Petitioner asks the Court to order that
none of the Motions filed in five independent ethics investigations * * *, which are stated to be filed on behalf of the Tribal Council and seek to intervene and to seek a stay of such ethics investigations, shall be considered approved as an official act of Tribal Council and shall not be pursued in any manner in any of those ethics proceedings unless and until it is established to this Court that Tribal Council has duly adopted the position set forth in the Motions and duly authorized the hiring of outside counsel for Tribal Council, to be paid from Tribal funds, to file and pursue Motions in each of the ethics proceedings w'hich seek an Order for Tribal Council to intervene and stay each ethics proceeding].]
In essence, Petitioner contends that Tribal Council foiled to satisfy three constitutional requirements when the motions to intervene and stay w7ere filed by “outside counsel.” According to Petitioner,
the following three constitutional requirements [were] not met by Tribal Council: A failure to adopt a written resolution as required by the Constitution, a failure to approve a written resolution in a public Tribal Council meeting [and]; a failure to adopt a written resolution in a public meeting by a majority of a quorum of Tribal Council that was not disqualified from voting to direct the Motions to intervene and stay to be filed by outside attorneys paid with Tribal funds. Tribal Council has foiled on not one or two, but all three of these basic constitutional requirements to take ac *144 tion as an official body and authorize Tribal funds to be used.
(Underlining in original).
Petitioner also requests that a copy of the TRO “be submitted to each Hearings Officer for each of the ethics proceedings, to apprise each such Officer that this Court has issued [sic] the foregoing Order restricting any action on each said Motion to Intervene and for a stay * * * until further Order, if any, of this Court.”
The Tribal Council disagrees with each of those points, contending that it violated no constitutional provision and acted with appropriate authority when it approved the filing by “outside counsel” in the ethics proceedings of the motions to intervene and stay. The Council also argues that, in any event. Petitioner is not entitled to the issuance of a TRO because he has not shown the requisite degree of harm resulting from the Council’s actions [2].
For the reasons that follow, the Court determines that neither a TRO nor a Show Cause Order should be issued in this case.
B. STANDARD OF REVIEW
The parties do hot appear to disagree about the legal standards that apply to the question of whether a court should issue a TRO. It is well-settled law that in order to obtain a preliminary injunction or a TRO, “the: moving: party must show' either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) that serious questions are raised, and the balance of hardships tips sharply in favor of the moving party.” Rucker v. Davis, 237 F.3d 1113, 1117 (9th Cir.2001) (en banc) (citation omitted). “These standards are not separate tests but the outer reaches of a single continuum.” Stuhlbarg Intern. Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n. 7 (9th Cir.2001) (citation omitted).
These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. * * * Under any formulation of the test, plaintiff must demonstrate that there exists a significant threat of irreparable injury.
Oakland Tribune, Inc. v. Chronicle Pub. Co., 762 F.2d 1374, 1376 (9th Cir.1985) (citations omitted).
Furthermore, “[i]n cases where the public interest is involved, the * * * court must also examine whether the public interest favors the plaintiff.” Fund for Animals, Inc. v. Lujan, 962 F.2d 1391, 1400 (9th Cir.1992) (citations omitted). And, “[i]n cases * * * in which a party seeks mandatory preliminary relief that goes wTell beyond maintaining the status quo pendent lite, courts should be extremely cautious about issuing a preliminary injunction.” Stanley v. University of Southern California, 13 F.3d 1313, 1319 (9th Cir.1994) (citation omitted).
This decision now turns to applying those legal standards to this ease.
C. ANALYSIS
1. Probability of Success on the Merits
Petitioner contends that he is all but certain to prevail on the merits. He argues that a “ruling on the merits can be made now and there is a strong probability if not a foregone conclusion that [he] will prevail.” In arguing that the Council committed constitutional violations when it al *145 lowed outside counsel to file the motions to intervene in the ethics proceedings and stay them, he relies in part on Article 3, section 3(h) of the Tribal Constitution, which provides that “[a]ll final decisions of the Tribal Council on matters of temporary interest or relating especially to particular individuals shall be embodied in resolutions.” He reasons that this provision requires “all final decisions” to be reflected in official Council resolutions. Yet he admitted at oral argument before this Court that the provision should not be taken quite that literally, and that the Council can take at least some actions without acting through formal resolutions. The point, at least for the present, is not whether Petitioner is right or wrong, but that his chances of succeeding on the merits are less clear and certain than he contends.
In arguing that the Council was required to meet in public, open session when it allowed “outside counsel” to file the motions to intervene and stay, Petitioner relies on subsection (f) of the same constitutional provision, which states in part that “[a]ll meetings of the Tribal Council shall be open to the public[,]” But Petitioner’s reading of that provision, which seems to allow for no private, off-the-record discussions concerning or decisions regarding litigation strategy, overlooks both the practical necessity of such private meetings and the evidence of the Council’s historic practice of conducting such discussions and reaching such decisions in private. Again, the Court need not decide whether Petitioner’s reading of the constitutional provision is correct. It is enough at present to note that Petitioner’s chances of prevailing on the merits are far from certain.
And, even setting aside those (and perhaps other) questions about the merits of Petitioner’s legal positions, Petitioner faces serious questions, that have been raised by the Council, about his standing to bring this case. Petitioner appears to base his claim of standing on his position as an elected member of Tribal Council and on his status as a Tribal member. But that claim does not serve to meaningfully distinguish him from any other concerned, involved Tribal member or official[3].
[W]hen the asserted harm is a “generalized grievance” shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction. * * * [And] even when the plaintiff has alleged injury sufficient to meet the “case or controversy” requirement, this Court has held that the plaintiff generally must assert his own legal right and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.
Worth v. Seldin, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (citations omitted). See also Board of County Com’rs of Sweetwater v. Geringer, 297 F.3d 1108, 1112 (10 th Cir.2002) (same). Moreover, when seeking a preliminary injunction, “[a] plaintiff must do more than merely allege imminent harm sufficient to establish standing, he or she must demonstrate immediate threatened injury as a prerequisite to preliminary injunction relief.” Associated Gen. Contractors of Cal. v. Coalition, 950 F.2d 1401, 1410 (9th Cir.1991).
Applying those requirements here suggests that, at the very least, there are serious doubts about whether Petitioner has sufficient standing to bring this case. He appears to assert a “generalized grievance” that could be shared by many Tribal *146 members and that is not particular to him. In many respects, he seems to seek to assert what he views as the interests of the Tribe, but he cannot “rest his claim to relief on the legal rights or interests of third parties.” Worth, 422 U.S. at 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 [4]. And standing is an aspect of justiciability. Id., at 498, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343. If Petitioner lacks standing, he has no chance of prevailing on the merits in this case. Again, the Court need not and does not decide this issue at this point in the proceedings. But the serious questions about Petitioner’s standing cast considerable doubt on his chances of prevailing on the merits.
In sum, the Court cannot conclude that Petitioner has shown a chance of “probable success on the merits.” Rucker, 237 F.3d at 1117. Given the doubts about his standing and what may be the other flaws in the merits of his claims, it even appears doubtful whether “serious questions [have been] raised.” Id, But, as discussed below, even if Petitioner’s chances on the merits appeared more certain, he would not be entitled to the issuance of a TRO because he has not shown the possibility of irreparable harm or that the balance of hardships tips sharply in his favor.
2. Showing of Harm to Petitioner
Petitioner’s claim of harm is as generalized as is the basis for his claim of standing. He notes that he is an elected Tribal official with a “strong interest if not official duty in having the Tribal Constitution observed in the conduct of Tribal business.” He asserts that the constitutional violations, which he alleges were committed by the Council, themselves amount to “a basis for irreparable injury!.]” But it is not at all clear why that should be true or how this case differs from any other one in which a Tribal member or official contends that some official action is improper.
Even if Petitioner is right on the merits of his claims, any injury does not appear to be irreparable and the balance of hardships does not tip sharply in his favor. Two of the ethics proceedings have been stayed, so no change in the status quo will occur while this case is pending. And in another one of the cases, the Hearing Officer determined that his own decision to take over control of the progress of the case rendered the motion for a stay moot. Thus, if Petitioner were to prevail here, the Court’s decision would have full effect in the ethics proceedings. Petitioner seems to view delay in the ethics proceedings as inherently harmful, but such delay does not amount to “irreparable injury.” Not all the ethics cases have been stayed, and with respect to those that have been stayed, they may proceed after this Court has ruled. Petitioner also cites what he views as improper use of Tribal funds to pay “outside counsel,” but again that injury, if it is one, is not “irreparable.”
In sum, Petitioner’s claim of injury is not sufficient to entitle him to the issuance of a TRO or a Show Cause Order. There appears to be little, if any, prospect of truly “irreparable” harm and the balance of hardships, if it tips at all in Petitioner’s direction, does not tip toward him “sharply.” Rucker, 237 F,3d at 1117. It also is not at all clear that the public interest favors Petitioner. If he is right on the merits, then he might have a forceful claim that he is protecting the public interest and that It favors him. But, as noted above, there are *147 serious questions regarding the merits of Petitioner’s legal claim. And, if he is wrong on the merits, then the public interest does not favor him. Thus, that factor as well does not weigh in Petitioner’s favor, but instead appears—at best for Petitioner—to hang in the balance.
CONCLUSION
Because of his weak showing of any harm to him, the doubts about his standing, and the other questions about the merits of his legal positions, Petitioner simply is not entitled to the relief he now7 seeks.
For the reasons given above, this Court declines to issue either a Temporary Restraining Order or a Show Cause Order as requested by Petitioner.

. The relief sought in Petitioner's suggested Show' Cause Order is similar. There he seeks an order requiring the Tribal Council to appear and show cause “why an injunction or other relief should not be issued to require withdrawal and no further actions to pursue the Motions to Intervene and for a Stay stated to be filed on behalf of the [Council]: in the independent ethics investigations pending before Hearings Officers appointed by Tribal Council to investigate complaints of alleged ethical misconduct under the Tribal Ethical Standards Ordinance, and further, to conjoin any payment for legal services for the filing or pursuit of said Motions unless and until payment from Tribal funds had been duly authorized by Tribal Council."

. Although, as noted above, Petitioner sought the issuance both of a TRO and a Show Cause Order, each similar but somewhat different relief sought in each order, the parties have not distinguished between the two orders in their briefing to the Court. The Court, thus, also does not distinguish between them in this decision.

. Petitioner was the complainant who initiated the pending ethics matters, but that does not necessarily make him apart to those proceedings.

. At oral argument Petitioner's attorney appeared to take considerable offense in reaction to the suggestion that his client might lack standing. But such a claim has nothing to do with a litigant's sincerity or good faith. The issue instead is whether there are adequate allegations of "demonstrable, particularized harm.” Id.